IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 06-cv-01958-WYD-MJW

JOEL LEDBETTER;
HEATH POWELL; and
DISA POWELL, as spouse to Heath Powell,

    Plaintiffs,

v.

WAL-MART STORES, INC.,
GENERAL ELECTRIC COMPANY,
EATON CORPORATION,
EATON CORPORATION d/b/a Cutler-Hammer,
EATON CORPORATION d/b/a Eaton Electrical Services & Systems,
EATON CORPORATION d/b/a Eaton Electrical, Inc.,
EATON ELECTRICAL, INC.,
ARUP a/k/a ARUP AMERICAS, INC., and
JOHN DOES 3-5 and 8-15, whose true names are unknown,

    Defendants.

**ORDER**

I.    <u>INTRODUCTION</u>

THIS MATTER is before the Court on Defendant Eaton Corporation and Eaton Electrical, Inc.'s ("Eaton") Motion for Summary Judgment (docket #108), filed January 25, 2008. The Defendants' motion seeks summary judgment on Plaintiffs' claims alleging various state law tort causes of action including premises liability, product liability and negligence. Specifically, the Plaintiffs claim Eaton negligently failed to train, supervise, and warn Plaintiffs Joel Ledbetter and Heath Powell or to otherwise exercise due care under the circumstances. As a result of the alleged negligence, Plaintiffs claim

they are entitled to recover tort damages against Eaton. Eaton, on the other hand, argues that as the statutory employer of Plaintiffs Joel Ledbetter and Heath Powell, summary judgment should be entered in its favor on all of Plaintiffs' claims. The Plaintiffs filed a response and Eaton filed a reply in support of its motion. After carefully considering the pleadings submitted by the parties, I find that Defendants' motion for summary judgment is denied for the reasons stated below.

II. FACTUAL BACKGROUND

The following facts are relevant to the motion at issue. In 2006, Wal-Mart Stores, Inc. ("Wal-Mart") hired Eaton to undertake infrared thermography ("IR Imaging") at various Wal-Mart stores throughout the country. Eaton is a full-service provider of electrical services and equipment. IR Imaging uses a temperature-sensitive camera to take images of working electrical equipment as preventative or predictive maintenance. The images identify any unusually high temperatures emanating from working electrical equipment as a means of identifying underlying problems that require maintenance. Typically, in order to perform the IR Imaging, the electrical equipment must be energized and exposed to the camera—that is, any faceplates or other material covering the electrical conductors is removed.

The following facts are disputed. Eaton claims that as of 2006, Eaton's IR Imaging teams typically included two or three members. One person operated the camera and made diagnostic notes, while one or two persons assisted by moving equipment, removing equipment covers and other activities related to the imaging. Eaton also claims that on some projects, Eaton provided all of the members of the IR

Imaging team. However, Eaton frequently provided the camera operator and subcontracted with an electrical contractor to provide the two assistants for the job. Eaton also argues that it subcontracted with RS Services, Inc. ("RS"), an electrical contractor, to provide two electricians as assistants for IR scans to be performed in Colorado in July of 2006. Eaton further states that it looked at other subcontractors but preferred to contract with RS based on price, availability, flexibility in scheduling, and Eaton's familiarity with RS from prior work.

Plaintiffs, on the other hand, argue that the deposition testimony states that the IR Imaging team consisted of an Eaton employee who performed the scan and one or two contract electricians. Plaintiffs further state that 95% of the work was contracted out to subcontractors, while Eaton employees performed about 5% of the work. Plaintiffs also argue that the deposition testimony does not suggest that Eaton contracted with RS for electricians for this project. Mr. Hancock, the Eaton engineer who coordinated the IR Imaging projects for Wal-Mart, testified that RS Services was selected because an Eaton pre-approved local contractor could not be located. Also, RS did not need to be pre-approved as RS played a substantial role in bringing Eaton to Wal-Mart's work.

The contract between RS Services and Eaton expressly provides that RS Services is to be considered an independent contractor: "At all times under this Agreement, Subcontractor [RS Services] shall be considered as an independent contractor. Subcontractor is not and shall not hold itself out as the agent, servant, employee, or representative in any manner of Contractor [Eaton]." Eaton had no part in the Plaintiffs' employment agreement, and the Plaintiffs would have been paid by RS

Services independent of whether Eaton was paid by Wal-Mart for the work performed.

Mr. Jerold Kutz, the Eaton employee working with the Plaintiffs in the weeks prior to the incident, was informed that he would be working with an outside contractor rather than Eaton employees on the IR Imaging project. Mr. Kutz testified that he was not the Plaintiffs' superior nor could he discipline them as their employer, dock their pay, or terminate their employment. The next fact is disputed. Plaintiffs' claim that Mr. Kutz testified that he was not actively supervising the Plaintiffs' work when he was not performing the IR scan itself. Eaton argues that Mr. Kutz did not supervise the Plaintiffs when he was busy doing camera work or taking notes (which was most of the time).

Mr. Kutz testified that the Plaintiffs were responsible for their own decisions on the job, and that he could not require them to wear protective gear because the Plaintiffs were not Eaton employees. Mr. Kutz further testified that if the Plaintiffs had been Eaton employees, they would have been required to follow Eaton policies and he would have stopped the job until they were in compliance. Mr. Kutz knew the Plaintiffs were in danger of serious injury or bodily harm when he worked with them performing infrared scans in the days prior to the incident. Mr. Kutz also knew there was a risk that he and the Plaintiffs might be severely burned, hospitalized or even killed by the work they were performing if the proper protective gear was not worn. Eaton did not want to be responsible for the certification of any RS Services employees with regard to arc flash hazard training because RS employees were not Eaton employees.

On July 11, 2006, Eaton was proceeding to perform an IR scan at the Wal-Mart store on Tower Road in Aurora, Colorado, with Eaton engineer Mike Angelo acting as

the camera operator while Plaintiffs Ledbetter and Powell were the assistants pulling panel covers. Plaintiffs Powell and Ledbetter were RS Services employees on July 11, 2006 and were at the Tower Road store pursuant to Eaton's subcontract with RS Services. The Plaintiffs were covered for workers' compensation purposes by their direct employer, RS Services. Plaintiffs Powell and Ledbetter were replacing the deadfront covers on a piece of switchgear when an electrical arc occurred between an energized switchgear and the panel cover they were replacing. Plaintiffs Powell and Ledbetter were injured in the arc flash. Both Plaintiffs Powell and Ledbetter have received worker's compensation benefits under RS Services' applicable coverage.

III. ANALYSIS

A. Standard of Review

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Equal Employment Opportunity Comm. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). "When applying this standard, the court must 'view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'" *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation omitted). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell*

*Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

B. <u>Whether Summary Judgment is Proper on Plaintiffs' Claims Against Eaton</u>

Eaton asserts that summary judgment should be granted on all of Plaintiffs' claims against it. Eaton argues that the Worker's Compensation Act bars a subcontractor's employee from suing a general contractor for a work injury. I note as an initial matter, the parties disagree as to whether Colorado or Oklahoma law should be applied. However, I need not decide this issue as I find there are genuine issues of material fact that preclude summary judgment under either Colorado or Oklahoma law.

The Colorado Supreme Court has held that "[t]he primary purpose of the workers' compensation act is to provide a remedy for job-related injuries, without regard to fault." *Finlay v. Storage Tech. Corp.*, 764 P.2d 62, 63 (Colo. 1988) (internal citations omitted). "The statutory scheme grants an injured employee compensation from the employer without regard to negligence and, in return, the responsible employer is granted immunity from common-law negligence liability." *Id.* The Colorado Supreme Court further instructed that "[t]o be afforded this immunity, an employer must be a 'statutory employer' as contemplated by the workers' compensation act." *Id.* The *Finlay* Court held that

> the test for whether an alleged employer is a 'statutory employer' under section 8-48-101 of the workers' compensation act is whether the work contracted out is part of the employer's 'regular business' as defined by its total business operation. In applying this test, courts should consider the elements of routineness, regularity, and the importance of the contracted service to the regular business of the employer.

*Id.* at 67. The Colorado Supreme Court further noted that

> [i]n applying the regular business test, Colorado courts have occasionally

explored the degree of control the alleged statutory employer retains over the employee. Employer control may be probative of the importance of the contracted services to the alleged employer. However, the statutory employment relationship is not predicated on a finding of employer control; rather, a showing that the alleged statutory employer maintains control over the employee represents only one method of demonstrating the factor of importance.

*Id.* at 67 n.4 (internal citations omitted).

"Under Oklahoma law, the principal for whom a contractor is performing work is immune from tort liability for injuries suffered by the contractor's employees in the course of that work, if the work performed by the contractor was 'necessary and integral' to the principal's operations." *Izard v. United States*, 946 F.2d 1492, 1494(10th Cir. 1991) (internal citations omitted). "Accordingly, the principal is the statutory employer of the injured employees and is liable to the injured employees only under the Oklahoma Workers' Compensation Act." *Id.* "Tasks performed by a contractor are a 'necessary and integral' part of a principal's operation when they '[1] are directly associated with the day-to-day activity carried on by the [principal's] line of trade, industry or business or [2] would customarily be done in that line of business.'" *Id.*

The Oklahoma Supreme Court adopted the following three-level analysis in determining whether a principal is a statutory employer of a contractor's employees.

> [A] court must first inquire whether the contract work is specialized or nonspecialized. This inquiry takes into consideration whether the level of skill, training, and experience required to perform the work at issue is not ordinarily possessed by workers outside the contract field. If the contract work is specialized per se, it is not, as a matter of law, part of the principal's trade, business, or occupation.
>
> If the contract work is not specialized per se, the court must then compare the contract work with the principal's trade, business, or occupation to determine whether the contract work could be considered a part thereof.

>Finally, the court must inquire whether the principal was actually engaged at the time of the injury in the trade, business, or occupation of the hired contractor.

*Id.* (citing *Bradley v. Clark*, 804 P.2d 425, 427-28 (Okla. 1991). Here, there has been no evidence presented or a suggestion that the contracted work completed by the Plaintiffs was specialized per se. Thus, the Court moves on to the second stage of the *Bradley* analysis. The *Bradley* Court set forth the following factors regarding this stage.

> Several factors, which have been considered, are: (a) Is the contract work routine and customary? That is, is it regular and predictable? Nonrecurring or extraordinary construction and repairs are usually held outside the scope of the statutory doctrine. (b) Does the principal have the equipment and/or manpower capable of performing the contract work? This sub-species of the speciality inquiry focuses on determining whether the contract work, as it relates to the hirer, is ordinarily handled through employees. (c) What is the industry practice relative to the contract work? . . . Basically, the factors developed by the jurisprudence strive to answer the overriding question of 'whether [the contract work] is, in that business, normally carried on through employees rather than independent contractors.'

*Bradley*, 804 P.2d at 428 n.10 (internal citations omitted). Finally, the third stage of the *Bradley* analysis is "whether the principal hirer was engaged, at the time of the injury, in the trade, business or occupation of the hired contractor." *Id.*

Turning to my analysis, after carefully considering the evidence submitted by both parties in connection with this issue and viewing it in the light most favorable to the Plaintiffs, I find that the Plaintiffs demonstrated through their response to Eaton's motion for summary judgment that there are genuine issues of material fact regarding whether Eaton was a statutory employer under either Colorado or Oklahoma law. First, there is a genuine issue of material fact as to whether Eaton always uses subcontractors as part of its regular business operation for necessary and integral tasks or whether this type of

work was ordinarily handled by Eaton employees. This is unclear from the evidence presented, and this issue is central to the analysis of whether Eaton was a statutory employer under either Colorado or Oklahoma law. Second, there is conflicting evidence as to what degree of control Eaton exercised over the contracted workers. At a minimum, I find that these factual disputes are open to different interpretations which impact Eaton's argument in its motion. Thus, summary judgment is not appropriate. Accordingly, I find that there are genuine issues of material fact regarding whether Eaton is a statutory employer, and thus summary judgment is not proper.

IV. <u>CONCLUSION</u>

Based upon the foregoing, it is

ORDERED that Defendant Eaton Corporation and Eaton Electrical, Inc.'s ("Eaton") Motion for Summary Judgment (docket #108), filed January 25, 2008, is **DENIED**.

Dated: May 9, 2008

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge